956 F.2d 1163
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
DAVIS MEMORIAL HOSPITAL; Elkins Area Medical Center,
Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellee,
v.
DAVIS MEMORIAL HOSPITAL, Defendant-Appellant,
and
Elkins Area Medical Center, Defendant.
UNITED STATES of America, Plaintiff-Appellee,
v.
ELKINS AREA MEDICAL CENTER, Defendant-Appellant,
and
Davis Memorial Hospital, Defendant-Appellee.
 Nos. 90-2495, 90-2504, 90-2507.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1991.
Decided March 9, 1992.
 
 1
 Appeals from the United States District Court for the Northern District of West Virginia. Richard L. Williams, District Judge. (CA-89-106-E-K)
 
 
 2
 Argued: Charles Derrick Stodghill, Civil Division, United States Department of Justice, Washington, D.C., for appellant; Joseph A. Wallace, Wallace, Ross & Harris, Elkins, W.V., for appellee Davis Memorial Hospital; Joseph M. Spivey, III, Hunton & Williams, Richmond, Va., for appellee Elkins Area Medical Center.
 
 
 3
 On Brief: Stuart M. Gerson, Assistant Attorney General, J. Christopher Kohn, Director, Robert M. Hollis, Assistant Director, Andrew L. Jiranek, Carlos T. Angulo, Civil Division, United States Department of Justice, Washington, D.C., for appellant; Paul J. Harris, Wallace, Ross & Harris, Martinsburg, W.V., for appellee Davis Memorial Hospital; John E. Hollerman, Hunton & Williams, Richmond, Va., for appellee Elkins Area Medical Center.
 
 
 4
 N.D.W.Va.
 
 
 5
 AFFIRMED.
 
 
 6
 Before K.K. HALL and NIEMEYER, Circuit Judges, and ALEXANDER HARVEY, II, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 ALEXANDER HARVEY, II, Senior District Judge:
 
 7
 The United States here appeals from an order of the district court entering judgment in favor of Appellees after a bench trial. Appellees cross-appeal from the district court's denial of their request for an award of costs and attorneys' fees. Finding no error, we affirm.
 
 
 8
 * In this civil action, the United States sought to recover damages from Davis Memorial Hospital ("Davis") and Elkins Area Medical Center ("EAMC"), two non-profit hospital corporations located in Elkins, West Virginia, for debts owed the government by Memorial General Hospital Association ("Memorial"). After the failure of an attempted merger between Memorial and Davis, Memorial filed a petition in bankruptcy and defaulted on loans obtained from the government.
 
 
 9
 In 1963, 1966 and 1980, two agencies of the federal government had made substantial loans to Memorial, a non-profit hospital corporation also located in Elkins. These loans were secured by liens on the assets of Memorial. In the early 1980's, Memorial had suffered financial distress because of a downturn in the local economy and changes in government third-party reimbursement schemes. In early 1985, officers of Memorial and Davis met and discussed a possible merger of the two institutions. Davis was Memorial's main competitor in the Elkins area, but unlike Memorial, Davis was well managed and had been able to adapt to changes in the hospital industry. Memorial and Davis exchanged financial information, and an investment banking firm was retained to study the proposed merger.
 
 
 10
 In August of 1985, Memorial and Davis entered into an agreement providing that, pending necessary regulatory approvals,[1] they would be consolidated into EAMC, a new corporation, which would assume the obligations of both hospitals when the consolidation became effective. EAMC then entered into agreements with Memorial and Davis whereby EAMC would provide management services to each hospital pending consummation of the merger. In late 1985 and early 1986, Memorial moved some of its operations and equipment to Davis in anticipation of renovations to its building.
 
 
 11
 In the ensuing months, EAMC discovered that Memorial's financial situation was far worse than previously estimated. In March of 1986, Memorial's auditors reported that Memorial had lost $4.7 million in the fiscal year ending September 30, 1985. During this period, EAMC made loans to Memorial to enable Memorial to meet its payroll and pay its tax obligations.
 
 
 12
 On July 18, 1986, Memorial filed a petition seeking Chapter 11 bankruptcy protection, and Davis' board of directors thereafter terminated its agreements with Memorial and EAMC. On February 1, 1989, EAMC was dissolved by its board. Accordingly, the proposed merger was never consummated.
 
 
 13
 On July 18, 1989, the government filed a four-count complaint in the United States District Court for the Northern District of West Virginia seeking recoveries from Davis and EAMC for the indebtedness of Memorial and asserting claims of de facto merger, alter ego, tortious interference with contract and tortious impairment of collateral.
 
 
 14
 On August 13 through 15, 1990, a bench trial limited to issues of liability was held in the district court. On August 31, 1990, the district court entered extensive Findings of Fact and Conclusions of Law, ruling in favor of defendants on each of the four counts of the complaint. The district court also denied defendants' request for an award of costs and attorneys' fees. The government appeals rulings made by the district court on its claims of de facto merger and tortious interference with contract, and Davis and EAMC appeal the district court's denial of their request for an award of costs and attorneys' fees.
 
 II
 
 15
 The government first contends that the district court erred in determining that none of the indicia of a de facto merger are present in this case.[2] The government challenges, inter alia, the district court's findings: (1) that there was no continuity of enterprise between Davis, Memorial and EAMC; (2) that Memorial did not promptly cease to operate; and (3) that Davis and EAMC did not assume the obligations of Memorial.
 
 
 16
 Extensive findings of fact were made by the district court. Pursuant to Rule 52(a), F.R.Civ.P., such findings shall not be set aside unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. In determining whether the district court's findings in this case are clearly erroneous, we construe the evidence in a light most favorable to Davis and EAMC. Ente Nazionale Per L'Energia Electtrica v. Baliwag Navigation, Inc., 774 F.2d 648, 654 (4th Cir.1985).
 
 
 17
 The doctrine of de facto merger is a well established exception to the general rule that "where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor." 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7122 (1983 ed.). The de facto merger exception " 'has been invoked where one corporation takes all of another's assets without providing any consideration that could be made available to meet claims of the other's creditors....' " Crawford Harbor Assoc. v. Blake Constr. Co., Inc., 661 F.Supp. 880, 884 (E.D.Va.1987) (quoting Ray v. Alad Corp., 560 P.2d 3, 7 (Cal.1977)). In Crawford Harbor, the tests applied under the de factor merger exception were summarized as:
 
 
 18
 (1) continuity of management, personnel, physical location, assets, and general business operations (i.e., continuity of enterprise); (2) continuity of ownership; (3) prompt cessation of the seller corporation's operations; and (4) assumption by the purchaser of obligations ordinarily necessary for the uninterrupted continuation of normal business operations of the seller.
 
 
 19
 Id. at 884. Since the theory of de facto merger is equitable in nature, no one of the above factors is necessary or sufficient to establish this exception to limited corporate liability. In Re Acushnet River & New Bedford Harbor, 712 F.Supp. 1010, 1015 (D.Mass.1989).
 
 
 20
 Applying these principles here, we conclude that the district court's finding that "indicia of a de facto merger are simply not present" was not clearly erroneous. First, the record establishes that there was no continuity of enterprise. Memorial, Davis and EAMC were at all times governed by separate boards and the personnel of Davis and Memorial were never fully consolidated. Evidence presented at the trial indicated that the three entities maintained separate accounting records and that the relocation of Memorial equipment to Davis was intended to be a temporary measure pending renovations to Memorial's building. Moreover, the necessary regulatory approvals for the merger were never issued.
 
 
 21
 Second, the district court did not err in determining that Memorial did not cease doing business "as soon as practically and legally possible." The government's contention that Memorial ceased operating when it moved operations to Davis is contradicted by evidence produced at the trial of the shared beliefs of Memorial, Davis and EAMC management that Memorial's building would be renovated and that Memorial would continue to function as a separate entity until the merger was fully consummated.
 
 
 22
 Third, neither Davis nor EAMC ever assumed obligations of Memorial which were necessary for the continuance of its normal business operations. While Davis and EAMC extended loans to Memorial in an effort to keep Memorial afloat until the merger was approved by regulators, they neither directly paid any obligation of Memorial nor legally bound themselves to do so.[3]
 
 
 23
 For these reasons, we affirm the district court's entry of judgment in favor of Appellees on the government's claim of de facto merger.
 
 III
 
 24
 The government next contends that the district court erred in determining that Appellees did not tortiously interfere with the loan agreements between the government and Memorial.
 
 
 25
 Under West Virginia law, the elements of a cause of action for tortious interference with contractual relations are: (1) the existence of a contract; (2) intentional and improper interference by the defendant; (3) actual inducement or other causation of a breach; and (4) resulting damages. See Cotton v. Otis Elevator Co., 627 F.Supp. 519, 522 (S.D.W.Va.1986), aff'd, 841 F.2d 1122 (4th Cir.1988). "Tortious interference requires a purposeful wrongful act without justification or excuse." Water Eng'g Consultants Inc. v. Allied Corp., 674 F.Supp. 1221, 1225 (S.D.W.Va.1987). "[T]he proximate cause of injury is the superior or controlling agency from which springs the harm, as contradistinguished from those causes which are merely incidental or subsidiary to such principal and controlling causes." Lilly v. Taylor, 155 S.E.2d 579, 589 (W.Va.1967).
 
 
 26
 On the record here, we conclude that the district court did not err in finding that the government failed to establish the necessary elements of intentional interference and causation. The determination of the district court that Appellees acted in good faith is supported by the totality of the evidence presented at the trial. Likewise, we conclude that the district court properly found that Appellees' conduct was not the proximate cause of Memorial's breach of its obligations to the government. As disclosed by the evidence produced at the trial, Memorial had been badly mismanaged, and the Elkins area was incapable of any longer sustaining two hospitals.
 
 
 27
 For these reasons, we also affirm the district court's entry of judgment in favor of Appellees on the government's claim of tortious interference with contractual relations.
 
 IV
 
 28
 In support of their cross-appeal, Appellees contend that the district court erred in denying their request for an award of costs and attorneys' fees. Appellees first argue that they are entitled to such an award because the government brought this suit in bad faith. Our review of the record discloses no bad faith or vexatious conduct on the part of the government which would support an award of costs and fees to Appellees.
 
 
 29
 Appellees also contend that they are entitled to an award of costs and attorneys' fees pursuant to the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412. Under the EAJA, a party who successfully defends an action brought by the government is entitled to an award of attorneys' fees and costs unless the district court finds that the position of the government was "substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Section 2412(d)(1)(B) provides, in pertinent part, that:
 
 
 30
 [a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement [of such expenses]....
 
 
 31
 Appellees requested an award of costs and attorneys' fees at the trial in this case, and this request was denied by the district court in its Order of August 31, 1990. However, Appellees did not thereafter file a formal application within thirty days of final judgment seeking an award of attorneys' fees and costs as required by § 2412(d)(1)(B) of the EAJA.
 
 
 32
 We conclude that Appellees are now barred from seeking attorneys' fees and expenses under the EAJA. No post-judgment application was filed by them in the district court showing that they were eligible for such an award and specifying the amount sought including an itemized statement of expenses. Whether or not the district court refused the request for such an award which was made at the trial, Appellees were still required to comply with provisions of the EAJA before any award could be made under that statute.
 
 
 33
 For all these reasons, the judgment of the district court is affirmed.
 
 
 34
 AFFIRMED.
 
 
 35
 K.K. HALL and NIEMEYER, Circuit Judges, joined.
 
 
 
 [1]
 Inter alia, approval by the West Virginia Health Care Cost Review Authority was necessary before the merger would become effective
 
 
 [2]
 It was conceded by all parties in the case that a legal consolidation or merger was never achieved
 
 
 [3]
 The district court found the "continuity of ownership" factor inapposite to this case because of the non-profit status of Memorial, Davis and EAMC